**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 16, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

HOWARD MICHAEL WAMPLER,

    Defendant-Appellant.

No. 09-6229

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

LARRY C. SHAVER,

    Defendant-Appellant.

No. 09-6230

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

LEWIS PATRICK COLBERT,

    Defendant-Appellant.

No. 09-6231

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(No. 5:09-CR-00168-C-3; No. 5:09-CR-00168-C-1; No. 5:09-CR-00168-C-2)**

John W. Coyle, III, Coyle Law Firm, Oklahoma City, Oklahoma, and Mack K. Martin, Martin Law Office, Oklahoma City, Oklahoma (J. David Ogle, Ogle Law Office, P.L.L.C., Oklahoma City, Oklahoma, with them on the briefs), for Defendants-Appellants.

Scott E. Williams, Assistant United States Attorney (Sanford C. Coats, United States Attorney, with him on the brief), Oklahoma City, Oklahoma, for Plaintiff-Appellee.

Before **GORSUCH** and **EBEL,** Circuit Judges, and **ARGUELLO**[*], District Court Judge.

**GORSUCH**, Circuit Judge.

The defendants argue that an unconsummated plea agreement between their former corporate employer and the government bars their current prosecution and upcoming trial. Despite this, the district court held the defendants must stand trial. So unless we hear their appeal now, the defendants worry, their "right not to be tried" under the terms of the plea agreement will be lost forever. But whatever else the plea agreement may do, one thing it doesn't do is confer jurisdiction on this court to entertain an interlocutory appeal. Generally, a defendant must await a final judgment in the district court before pursuing an appeal. To overcome this rule and secure interlocutory review of a collateral

---

[*] The Honorable Christine M. Arguello, United States District Court Judge, District of Colorado, sitting by designation.

order based on a claimed "right not to be tried," some constitutional or statutory provision must grant him or her that right. Where, as here, no such provision is in play, we must, as usual, defer review of the defendants' arguments until after their trial, should it happen to result in a final judgment of conviction.

I

The genesis of this case lies in another, earlier proceeding and some sense of that first proceeding is helpful to understand the one now before us.

It all began when the government targeted McSha Properties, Inc. and certain of its employees in a criminal investigation. According to the government, the company; its founder, Larry Shaver; and four other principals, Michael Wampler, Lewis Colbert, Michael McClure, and Steven Jones, used falsified construction invoices to inflate the costs of the company's low-income housing projects. On the basis of these false invoices, the government alleged, the company secured loans from financial institutions and tax credits from the federal government far in excess of what its projects merited — all while the individuals pocketed a small fortune.

As the investigation progressed, the two sides began plea negotiations. In the hope of inducing the government to focus its attention on the company rather than on them, Mr. Shaver voluntarily relinquished his controlling voting proxies in the company and agreed to resign as Chairman and CEO; Mr. Colbert asked to have his CPA license placed in retirement status; and Mr. Wampler resigned as an

officer and director of the company. All these efforts seemed to pay off. The negotiations culminated in a proposed plea agreement, pursuant to which McSha agreed to plead guilty to a two-count information charging it with wire fraud and money laundering; in return, the government agreed not to prosecute any of the individuals who ran McSha.

The agreement, however, soon derailed. When the company petitioned the district court to enter a plea of guilty, the court questioned whether the plea agreement unjustly let the company's principals off the hook. Ultimately, the court announced pursuant to Fed. R. Crim. P. 11(c)(3)(A) that it would not approve the agreement for that reason. McSha then withdrew its plea and the district court entered an order dismissing the matter without prejudice.

At first, the company sought to appeal the district court's decision refusing to accept its plea agreement, but it later withdrew the appeal. And behind that lies another small story. By this time, Mr. Shaver had relinquished control of the company, so Mr. Jones and Mr. McClure controlled its operations. When the government offered that pair immunity from future prosecution if they caused McSha to dismiss the appeal, they readily agreed.

And that brings us now to the case before us. This case began when, after the appeal's dismissal and taking up the district court's suggestion, the government filed an indictment against Messrs. Shaver, Wampler, and Colbert charging them with various crimes. To the indictment, the defendants replied

with a motion to dismiss.  In their motion, the defendants raised three arguments, all focused on the implications of the earlier, failed plea deal.  First, the defendants argued, the terms of the failed plea agreement between McSha and the government barred their indictment; the old plea agreement, they reminded the district court, included a promise that they would not be prosecuted.  Second, the defendants contended that the district court effectively and improperly coerced the government into filing the indictment against them, implicating separation of powers concerns.  Third and finally, the defendants said, the indictment was motivated, at least in part, by a desire to retaliate against them for allowing the company to appeal the district court's rejection of the plea agreement — that is, before Mr. Jones and Mr. McClure were induced to withdraw the appeal.  The government's desire to retaliate against them, the defendants submitted, improperly trenched upon their First Amendment rights.  Finding none of these arguments persuasive, the district court denied the defendants' motion to dismiss and it is this ruling the defendants now wish to appeal.

II

The first question we must ask in this and any appeal is whether we have jurisdiction to entertain it.  The question is especially pressing where, as here, everyone in the case admits that the only thing being appealed is a non-final or interlocutory order denying a motion to dismiss.  Under 28 U.S.C. § 1291, Congress has afforded the courts of appeals jurisdiction over "final decisions of

the district courts." Usually, this means litigants must await a final judgment terminating their case before pursuing an appeal. *Mohawk Indus. v. Carpenter*, 130 S. Ct. 599, 605 (2009). So it would appear that the defendants' arguments in their motion to dismiss should be taken up only after their trial and only if it happens to result in a final judgment of conviction. If the district court erred in denying the motion to dismiss, we can say so and undo any conviction then.

Of course, the defendants do not want to wait until after trial. They want their appeal heard now. And, they note, in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949), the Supreme Court long ago held that, as a "practical" matter, some interlocutory orders can qualify as "final decisions" within the meaning of § 1291 because, while they don't conclusively resolve the litigation, they do conclusively resolve important questions separate from the merits. *Id.* at 546-47. In our case, the defendants claim that all three of their arguments may be pursued now, before trial, under *Cohen*'s terms. This is because, they explain, each of their arguments is collateral to the question of their guilt or innocence on the charges against them and each involves a "right not to be tried" granted by the plea agreement — a right that will be lost if review is deferred until after a final judgment.

To evaluate the defendants' assertion and our jurisdiction to entertain this appeal, we first outline *Cohen*'s application in the criminal context to claims

asserting a "right not to be tried," before then turning to assess how the three arguments the defendants wish to pursue measure up against this legal standard.

A

To qualify as a "practically" final decision amenable to interlocutory appeal under *Cohen*, the district court's order in question must (1) finally decide (2) an important question collateral to (or separate from) the merits of the underlying proceeding, and (3) be "effectively unreviewable" after final judgment. *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994). In case after case in year after year, the Supreme Court has issued increasingly emphatic instructions that the class of cases capable of satisfying this "stringent" test should be understood as "small," "modest," and "narrow." *See id.* at 868 ("stringent"); *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995) ("small"); *Will v. Hallock*, 546 U.S. 345, 350 (2006) ("modest"); *Mohawk*, 130 S. Ct. at 609 ("narrow"). The Court has come to tell us, as well, that the *Cohen* test should be applied with special — in fact, "the utmost" — "strictness" in criminal cases "[b]ecause of the compelling interest in prompt trials." *Flanagan v. United States*, 465 U.S. 259, 265 (1984); *see also Abney v. United States*, 431 U.S. 651, 657 (1977) ("[T]he delays and disruptions attendant upon intermediate appeal . . . are especially inimical to the effective and fair administration of the criminal law." (internal quotation omitted)). And, the Court has recently "stressed" and "admoni[shed]" that *Cohen* must "never be allowed to swallow the general rule

that a party is entitled to a single appeal, to be deferred until final judgment has been entered." *Digital*, 511 U.S. at 868; *Mohawk*, 130 S. Ct. at 605.[1]

No doubt, all these cautionary directions are inspired by the High Court's respect for the plain language of § 1291 — which restricts appellate review to "final decisions" — and for the congressional policy which the statute seeks to advance — namely that it is the *district judge*, not the appellate judge, who in our system of justice has "primary responsibility to police the prejudgment tactics of the litigants, and . . . the district judge can better exercise that responsibility if the appellate courts do not repeatedly intervene to second-guess prejudgment rulings." *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 436 (1985). As the Supreme Court has explained, "[p]ermitting piecemeal, prejudgment appeals . . . undermines efficient judicial administration and encroaches upon the prerogatives of district court judges, who play a special role in managing ongoing litigation" under our judicial system, as reflected in § 1291. *Mohawk*, 130 S. Ct. at 605 (internal quotation marks omitted). Toward that same end, the Court has told us that *every* issue presented in an interlocutory appeal must "fall within *Cohen*'s collateral-order exception" before we may review its merits; the courts of appeals possess no "pendent" jurisdiction permitting them to decide collateral issues that

---

[1] Some members of the Court have in the last few years suggested going further still, questioning whether *Cohen* remains consistent with § 1291 in light of contemporary amendments to the Rules Enabling Act. *See Mohawk*, 130 S. Ct. at 610-12 (Thomas, J., concurring in part and concurring in the judgment); *see also Sell v. United States*, 539 U.S. 166, 190-93 (2003) (Scalia, J., dissenting).

fail to meet *Cohen*'s test. *Abney*, 431 U.S. at 663; *United States v. Wittig*, 575 F.3d 1085, 1095 (10th Cir. 2009).

When it comes to the second and third aspects of *Cohen*'s test — requiring the collateral question to be both "important" and "effectively unreviewable" after a final judgment — a key distinction must be recognized in the criminal context. Any criminal trial carries with it many and grave tribulations for the defendant that no vindication after trial can erase. *See United States v. MacDonald,* 435 U.S. 850, 860 n.7 (1978). In one and very real sense, any district court decision refusing to enforce a legal entitlement capable of commanding the dismissal of criminal charges before trial is both "important" and "effectively unreviewable" after final judgment. For example, if the district court forces a defendant to go to trial after erroneously rejecting his motion to dismiss predicated on a Sixth Amendment speedy trial violation or a Fourth Amendment suppression argument, an important "right not to be tried" guaranteed by those provisions might well be said to be effectively lost.

But this isn't enough to warrant interlocutory appellate review. In both circumstances — in the Sixth Amendment speedy trial arena and the Fourth Amendment context — it is well and long settled that district court decisions may be reviewed only *after* trial. *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 801 (1989). As the Supreme Court has put it, the fact that a district court may have erred in denying a defendant the benefit of a collateral legal entitlement

- 9 -

that would and should have allowed him to avoid trial "has not led the Court to conclude that such [a] defendant[] can pursue [an] interlocutory appeal[]." *Id.* The relevant question for purposes of *Cohen*'s second and third prongs then, can't be whether the district court's decision denies the defendant a "right not to stand trial." *See also Digital*, 511 U.S. at 873 ("Section 1291 requires courts of appeals to view claims of a 'right not to be tried' with skepticism, if not a jaundiced eye."). While a post-judgment appeal may afford the defendant only an "imperfect[]" remedy to an improperly denied motion to dismiss, *some* meaningful review is available after trial — after all, an appellate court can still undo an unlawful conviction. *Mohawk*, 130 S. Ct. at 605. And this, the Court has said, is generally all that's required or permitted by § 1291. *Id.*

As it happens, the *only* time a criminal defendant's claimed "right not to be tried" will justify interlocutory appellate review is when a "statutory or constitutional [provision] guarantee[s] that trial will not occur — as in the Double Jeopardy Clause ('nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb'), . . . or the Speech or Debate Clause ('[F]or any Speech or Debate in either House, [the Senators and Representatives] shall not be questioned in any other Place')." *Midland Asphalt*, 489 U.S. at 801; *see also infra* n.4 (noting examples of statutes guaranteeing interlocutory review). Only then — only when a statutory or constitutional provision *itself* contains a *guarantee* that a trial will not occur — may courts of appeals intervene prior to a

final judgment to review the defendant's claimed "right not to be tried." *Id.*; *see also United States v. Quaintance*, 523 F.3d 1144, 1146 (10th Cir. 2008) ("A right not to be tried rests upon an explicit statutory or constitutional guarantee that trial will not occur.") (internal quotation omitted); *United States v. Ambort*, 193 F.3d 1169, 1171 (10th Cir. 1999) (same).[2]  And, of course, most statutory and constitutional provisions — including the Sixth and Fourth Amendments — contain no such guarantee against trial even while they surely protect other important interests.

What's the reason for this rule?  The Court has offered at least two rationales.  First, statutory and constitutional guarantees against trial are, the Court has said, simply more important than others.  "The third *Cohen* question, whether a right is 'adequately vindicable' or 'effectively reviewable,' . . . cannot be answered without a judgment about the value of the interests that would be lost through rigorous application of a final judgment requirement," a judgment we are called on to make in the second aspect of *Cohen*'s test.  *Digital*, 511 U.S. at 878-79.  And when it comes to making that judgment, the Court has held "there are surely sound reasons for [privileging] . . . rights . . . originating in the Constitution or statutes.  When a policy is embodied in a constitutional or statutory provision entitling a party to immunity from suit (a rare form of

_____

   [2]  How explicit the right not to be tried must be in the statutory or constitutional text is a matter of some ongoing discussion by members of the High Court.  *Compare Midland Asphalt*, 489 U.S. at 801 *with Digital*, 511 U.S. at 875.

- 11 -

protection), there is little room for the judiciary to gainsay its 'importance.'" *Id.* at 879. *See also Mohawk*, 130 S. Ct. at 605. Second and relatedly, the Court has explained that the final decision rule is a creation of Congress, and as such something Congress can modify. So where a statutory (or, of course, a constitutional) entitlement includes a right not to be tried — a right that by its terms contemplates vindication prior to trial — we must find some way to reconcile that direction with § 1291's direction favoring appeals only after final decisions. In this way, the Court has reasoned, "[w]here statutory and constitutional rights [not to be tried] are concerned . . . the collateral order doctrine might . . . be understood as reflecting the familiar principle of statutory construction that, when possible, courts should construe statutes (here § 1291) to foster harmony with other statutory and constitutional law." *Digital*, 511 U.S. at 879.

B

Having explained that a criminal defendant's claimed right not to be tried must rest upon a statutory or constitutional guarantee in order to permit an interlocutory appeal, we now turn to the defendants' appeal to see how it measures up. We assess each of the defendants' three proffered arguments independently, as we must.

1

The defendants start by arguing that the government breached its plea agreement with McSha. The agreement promised that they, the individual corporate officers, would not have to face trial. The defendants say they relied on the government's promise, and the government is now improperly disavowing its end of the bargain. Neither can we wait until after trial to take up this matter, the defendants argue. They say the plea agreement expressly gave them a right to avoid trial altogether and the agreement itself, along with due process, requires us to enforce the agreement's terms now.

How an executory plea agreement between a company and the government might serve as the font of *any* legal entitlements, let alone to the company's principals, the defendants do not explain.[3] But for purposes of assessing our jurisdiction we assume (without granting) it does. Even doing so — even assuming the plea agreement entitles the defendants to avoid any prosecution or trial — we hold that the district court's order denying their motion to dismiss still

---

[3] None of the defendants was a party to the deal and the deal was *rejected* by the district court, thus depriving it of any binding effect. *See, e.g., Williams v. Jones*, 571 F.3d 1086, 1094 (10th Cir. 2009) (until district court accepts it, a plea agreement is "executory in nature"); *Mabry v. Johnson*, 467 U.S. 504, 507 (1984) ("A plea bargain . . . is a mere executory agreement" until "embodied in the judgment of a court"), *abrogated on other grounds by Puckett v. United States*, 129 S. Ct. 1423, 1430 n.1 (2009); *United States v. Norris*, 486 F.3d 1045, 1051 (8th Cir. 2007) (en banc) ("Rule 11 serves notice [that a plea agreement is] merely executory until the district court accepts the defendant's" guilty plea).

cannot be appealed on an interlocutory basis because it implicates neither a *statutory* nor a *constitutional* guarantee against trial.

Our holding on this score was presaged long ago. Years before *Midland Asphalt* and *Digital Equipment*, in *United States v. Eggert*, 624 F.2d 973, 975 (10th Cir. 1980) (per curiam), we rejected a challenge very much like this one. The defendant there reached a plea agreement with a United States Attorney's Office in California that allegedly promised no new indictments against him. *Id.* at 974. Later, an Oklahoma federal prosecutor indicted the defendant, and the defendant argued that his California plea agreement precluded the Oklahoma prosecution. *Id.* The district court rejected this argument and, exactly as here, the defendant there sought to appeal. We declined to hear the appeal, explaining that the issue whether an indictment is barred by a plea agreement can be adequately "reviewed [and redressed] by th[e] court on direct appeal in the event of a conviction." *Id.* at 975. The defendants before us offer no way in which we might faithfully reach a different result in their case.

Instead, they ask us to follow *United States v. Alessi*, 536 F.2d 978, 980 (2d Cir. 1976), which allowed an interlocutory appeal seeking to enforce a prior plea agreement. Problematically, however, the defendants don't acknowledge that this court considered *Alessi* in *Eggert* and declined to follow it. *See Eggert*, 624 F.2d at 975. Even more problematically, the defendants do not acknowledge that *Alessi* was overruled by the Second Circuit over a decade ago in *United States v.*

- 14 -

*Macchia*, 41 F.3d 35, 38-39 (2d Cir. 1994). Or that the Second Circuit held in *Macchia*, exactly as we hold today, that under *Midland Asphalt* a criminal defendant can pursue an interlocutory appeal "only where the constitutional or statutory protection relied upon confers a right not to be tried." *Id.* at 39.

Allowing the defendants' appeal in this case would not only run afoul of the Supreme Court's rule requiring a statutory or constitutional guarantee against trial, it would also thwart the rationales the Court has offered for that rule. It is surely an important thing to recognize congressional or constitutional provisions that grant an immediate right of review, and to seek to reconcile those commands with the congressional command found in § 1291, as *Digital Equipment* noted. *See supra* Section II.A. But these imperatives are not at play when it comes to plea agreements. Plea agreements, after all, are no more than creatures of courts and litigants, executory private agreements without force of law until embodied in a court's judgment. Neither does the right at stake in a plea agreement any more rise to the level of importance necessary to outweigh "the societal interests advanced by the ordinary operation of final judgment principles" than do Fourth or Sixth Amendment violations, which have long been held unamenable to interlocutory appellate review. *Digital*, 511 U.S. at 879. It would, as well, be a very odd thing if one district court's approval of a plea agreement could pretermit proceedings and compel immediate appellate review in a second district court proceeding when the second district court interprets that plea agreement as

- 15 -

permitting a trial to go forward. Such a result would do nothing to advance and much to undermine § 1291's policy of protecting the prerogative of district court judges to manage the litigation process up to and through final judgment.

Even if current law bars their way, the defendants suggest we should use their case to extend it to permit their appeal. This, however, we may not do. Soon after *Midland Asphalt* announced the rule requiring a "statutory-or-constitutional guarantee" to secure an interlocutory appeal in cases like this one, Congress entered the arena by amending the Rules Enabling Act to allow the Supreme Court to prescribe rules "defin[ing] when a ruling of a district court is final for the purposes of appeal under section 1291." 28 U.S.C. § 2072(c). In 2009, the Supreme Court in *Mohawk* held that this provision "warrant[s] the Judiciary's full respect," and has "important virtues" because the rule-making process "draws on the collective experience of bench and bar" and "facilitates the adoption of measured, practical solutions." 130 S. Ct. at 609 (internal quotation marks omitted). For these reasons, the Court held that "[a]ny further avenue for immediate appeal" of interlocutory rulings "should be furnished, if at all, through rulemaking, with the opportunity for full airing it provides," not through further case-by-case expansion of the *Cohen* doctrine. *Id.*[4] Out of deference to the rubric

_____

[4] Congress has not only provided a mechanism for *defining* when an appeal is final, it has also demonstrated that it is fully capable of creating *exceptions* to the final decision rule when appropriate. *See, e.g.,* 28 U.S.C. § 1292 (listing immediately appealable "[i]nterlocutory decisions"); Fed. R. Civ. P. 23(f)

(continued...)

- 16 -

Congress has created, then, any request for expansion of the *Cohen* doctrine should be directed to the rules committee, not this court.

2

Separately, the defendants seek to appeal their separation of powers claim, contending that the district court improperly usurped the Executive's prosecutorial function by effectively instructing the government to launch indictments against them (the defendants).  Again, however, whatever the merits (or demerits) of such an argument, it is not amenable to our jurisdiction at this time.  And that's because, while the separation of powers inheres in the Constitution's structure and is surely an essential feature of our constitutional order, the constitutional document doesn't include a guarantee protecting those invoking separation of powers doctrine from trial.  The defendants' argument, thus, is more like a Sixth Amendment speedy trial or Fourth Amendment suppression argument than it is a Double Jeopardy argument — it is an argument arising from the Constitution but one that may be brought to this court on appeal only after trial, not before.

---

[4](...continued)
(pursuant to § 1292(e), accords Courts of Appeals discretion to permit appeals from district court orders granting or denying class-action certification); Fed. R. Civ. P. 54(b) (providing for "entry of a final judgment as to one or more, but fewer than all, claims or parties").  Indeed, Congress has been and remains free to add an exception for rights guaranteed by a plea agreement, as it has for the privately conferred right to arbitration.  *See Digital*, 511 U.S. at 879 & n.7.

The defendants seek to avoid this result by referring us to *United States v. Bolden*, 353 F.3d 870 (10th Cir. 2003). In *Bolden*, the government sought an interlocutory appeal to challenge a district court's decision disqualifying an entire United States Attorney's office. *Id.* at 873-74. The government did so arguing that the district court had intruded on the Executive's prosecutorial function and that no remedy would exist after final judgment to correct that intrusion — in the event of a judgment in its favor, the government, as the prevailing party, normally can't appeal; in the event of a loss, double jeopardy generally precludes it from winning a new trial. *Id.* at 877. Only because "no post-trial relief exist[ed] that could remedy the alleged separation of powers injury" did the government seek and we permit the appeal. *Id.* at 878. By its terms, *Bolden* thus speaks only to the government's right to pursue an interlocutory appeal and does nothing to alter the rule requiring criminal defendants to identify a statutory or constitutional guarantee barring their trial. Neither does *Bolden*'s rationale apply here: unlike the government, which may be left without any appellate review after trial to remedy a violation of the separation of powers, a defendant's separation of powers argument *can* be pursued and vindicated on appeal after final judgment in the event of a conviction.[5]

---

[5] This is not to say that a defendant can *never* appeal a separation of powers claim before completion of the underlying action. In *Morrison v. Olson*, for example, the Supreme Court reviewed separation of powers issues raised by parties who had been held in contempt for failure to comply with a subpoena.

(continued...)

3

Finally, the defendants argue they should be allowed an immediate appeal because the government's decision to indict them "was clearly motivated, at least in part, by a desire to dispose of the [defendants'] First Amendment right of access to the courts, or to retaliate against them for joining the appeal" that the company eventually abandoned. Opening Br. at 34. In support of this argument, the defendants seek to analogize their case to *United States v. P.H.E., Inc.*, 965 F.2d 848 (10th Cir. 1992).

This tack fails as well. We have repeatedly rejected challenges much like this one, explaining that "[n]owhere in the Constitution or laws of the United States is there an 'explicit statutory or constitutional guarantee' of a right not to be tried for ordinary speech, even if otherwise protected by the First Amendment." *Ambort*, 193 F.3d at 1171; *see also Quaintance*, 523 F.3d at 1146. Instead, we have held, "First Amendment defenses like those asserted here are adequately safeguarded by review after any adverse final judgment." *Ambort,* 193 F.3d at 1172. Thus to the extent the defendants wish to argue that a First

---

[5](...continued)
487 U.S. 654 (1988). This is because, as the Court has explained, an "order finding a nonparty witness in contempt is appealable notwithstanding the absence of a final judgment in the underlying action." *U.S. Catholic Conference v. Abortion Rights Mobilization*, 487 U.S. 72, 76 (1988). And, of course, mandamus procedures supply another possible avenue for relief, though one the defendants in this case have not sought to pursue.

Amendment defense precludes their prosecution, we hold it is a matter that we may resolve after — but only after — a final judgment.

As to *PHE*, we have long recognized that it is "perhaps unique," permitting as it did an interlocutory appeal only in light of the following "confluence of factors": (1) the government had previously pursued multiple prosecutions against the defendant in question; (2) there was substantial evidence the prosecutions had been undertaken in bad faith; and (3) the apparent purpose *and* effect of the multiple prosecutions were to act as a prior restraint on the defendant's protected First Amendment publishing activities. 965 F.2d at 854-55; *see also Ambort*, 193 F.3d at 1172; *Quaintance*, 523 F.3d at 1147. All of these conditions were — and, we hold again today by way of confirmation, are — essential predicates to the review granted in *PHE*. None, however, is present in this case.

### III

That would seem to mark the end of the road for the defendants' appellate effort. None of the arguments they pursued in their motion to dismiss is amenable to interlocutory review. But before us the defendants seek to raise one more argument — one they didn't press in their motion to dismiss before the district court. Now, they ask us to hold that *double jeopardy* bars their upcoming trial. And, they observe, the Constitution's Double Jeopardy clause *does* include an express guarantee against trial. *See* U.S. Const. amend. V; *Midland Asphalt*,

- 20 -

489 U.S. at 801; *Abney*, 431 U.S. at 661-62.  Accordingly, unlike all their other arguments, this one is at least a *possible* candidate for interlocutory review.

But it isn't in *this* case.  The defendants didn't pursue a double jeopardy argument before the district court and so it is either waived or at least forfeited. *See McKissick v. Yuen*, 618 F.3d 1177, 1189 (10th Cir. 2010).[6]  And even if we were inclined to overlook this problem, another insurmountable barrier would still block the defendants' way.  The Supreme Court has told us that a claim of double jeopardy must be at least "colorable" to confer interlocutory jurisdiction on an appellate court.  *Richardson v. United States*, 468 U.S. 317, 322 & n.6 (1984); *see also United States v. McAleer*, 138 F.3d 852, 857 (10th Cir. 1998).  And the defendants' double jeopardy claim isn't this, and isn't for at least two reasons.

First, to invoke the Constitution's protection against *double* jeopardy, naturally one must have been subjected to jeopardy for a *first* time.  It is a "fundamental principle that an accused must suffer jeopardy before he can suffer

---

[6]  The closest the defendants came to raising this issue was in a footnote in their motion to dismiss the indictment where they stated:  "Collateral estoppel is a component of the concept of double jeopardy.  It 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'  *Ashe v. Swenson*, 397 U.S. 436, 443 (1970); *accord United States v. Console*, 13 F.3d 641, 664 (3d Cir. 1993) ('The double jeopardy clause protects against relitigation of an issue necessarily determined in the defendant's favor by a valid and final judgment.')."  Aplt. App. at 67.  Plainly, this footnote, appearing in the section of the defendants' brief titled "The Indictment Violates the Terms of the Original Plea Agreement" did not clearly raise the issue they now seek to pursue — that double jeopardy bars the present indictment.  No doubt that's why the district court's opinion didn't address it.

- 21 -

double jeopardy." *Serfass v. United States*, 420 U.S. 377, 393 (1975). As the defendants concede, however, the prior criminal proceeding resulting in the failed plea agreement involved charges brought *only* against the company, not them. The individual defendants before us were *themselves* never placed in jeopardy in the first proceeding. Neither can they bootstrap onto any jeopardy the company may have faced. The protections the double jeopardy clause affords are "intrinsically personal," *Dep't of Revenue of Mont. v. Kurth Ranch*, 511 U.S. 767, 779 (1994) (internal quotation omitted), and just because the corporation faced criminal jeopardy hardly means that its officers, directors or shareholders also automatically faced jeopardy, too, *see United States v. Louisville Edible Oil Prods., Inc.*, 926 F.2d 584, 586 (6th Cir. 1991) (rejecting claim that punishment of corporation constituted punishment of employees paid on the basis of the corporation's profits); *United States v. Woods*, 949 F.2d 175, 177 (5th Cir. 1991) (per curiam) (action against corporation does not constitute punishment of its sole shareholder); *cf. United States v. Baird*, 63 F.3d 1213, 1219 (3d Cir. 1995) ("[J]eopardy does not, and cannot, attach until one is made a *party* to a proceeding before a trier of fact having jurisdiction to try the question of guilt or innocence, and that, until such time, the constitutional double jeopardy prohibition can have no application"). Undoubtedly, the defendants before us

well know all this:  after all, they negotiated the initial plea agreement specifically to *avoid* being personally prosecuted.[7]

Second, even if the defendants somehow could stand in McSha's shoes for purposes of double jeopardy analysis, this still wouldn't help their cause. Jeopardy attaches in a jury trial "when the jury is empaneled and sworn," *Crist v. Bretz*, 437 U.S. 28, 36 (1978), and in a bench trial "when the court begins to hear evidence," *Serfass*, 420 U.S. at 388.  In the plea context at issue in this case, jeopardy does not attach at least until the guilty plea is accepted, and perhaps not until even later.  *See United States v. Combs*, 634 F.2d 1295 (10th Cir. 1980) (discussing plea acceptance or sentencing); *United States v. Thompson*, 814 F.2d 1472, 1478 n.6 (10th Cir. 1987).[8]  Here, of course, the district court never accepted the company's plea.  Jeopardy thus never attached to McSha, so not even McSha (let alone the defendants) could now assert a colorable claim of double

---

[7]  Were McSha just a shell company, and the earlier prosecution actually directed at the individual defendants now before us, as alter egos of the company, that *might* be another story.  *See United States v. 51 Pieces of Real Property, Roswell*, No. 97-1440, 1998 WL 440439, at *3 & n.4 (10th Cir. July 17, 1998) (unpublished).  But we need and do not decide that question as none of the defendants before us makes such a claim.

[8]  Even after the guilty plea is accepted, it may sometimes be withdrawn or a conviction under it challenged on appeal — circumstances that will not create a double jeopardy impediment to a subsequent prosecution.  *See, e.g.*, *Combs*, 634 F.2d at 1300 n.1 (McKay, J., concurring in part and dissenting in part); *United States v. Podde*, 105 F.3d 813, 818 (2d Cir. 1997); *Taylor v. Kincheloe*, 920 F.2d 599, 605-06 (9th Cir. 1990); *United States v. Baggett*, 901 F.2d 1546, 1549-50 (11th Cir. 1990); *Fransaw v. Lynaugh*, 810 F.2d 518, 524-25 (5th Cir. 1987).

jeopardy.  Thus it is that the individual defendants have no colorable claim of double jeopardy that might possibly warrant this court's intervention prior to trial.

* * *

Because we are without appellate jurisdiction, this matter is

*Dismissed.*