FILED
United States Court of Appeals
Tenth Circuit

January 6, 2021

Christopher M. Wolpert
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

FARMLAND PARTNERS, INC.,

    Plaintiff - Appellee,

v.

ROTA FORTUNAE, whose true name is unknown, and JOHN/JANE DOES 2-10, whose true names are unknown,

    Defendant - Appellant.

No. 19-1011
(D.C. No. 1:18-CV-02351-KLM)
(D. Colo.)

---

ORDER AND JUDGMENT*

---

Before **BRISCOE**, **HOLMES**, and **EID**, Circuit Judges.

---

The central merits issue in this appeal is whether the Texas Citizens Participation Act ("TCPA"), Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001-27.011 (West 2019), applies in federal court in our circuit. "The TCPA is an anti-SLAPP statute that allows a claim to be dismissed when the defendant can show that the claim was brought to chill the exercise of First Amendment rights." *NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*, 745 F.3d 742, 746 (5th Cir. 2014) (footnote

---

    * This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and 10th Circuit Rule 32.1.

omitted).[1]  Because we conclude that we lack jurisdiction over this appeal, we do not reach the merits of this question.  Specifically, we hold that we lack jurisdiction because the district court's order does not satisfy the collateral order doctrine.  We therefore **DISMISS** this appeal and **REMAND** the case to the trial court for further proceedings consistent with this order and judgment.

## I

## A

Farmland Partners Inc. ("FPI") is "a publicly traded real estate investment trust" with farmland holdings throughout North America.  Aplt. App., Vol. I, at 121 (Compl., filed July 23, 2018).  Rota Fortunae ("RF"), Latin for "wheel of fortune," is a pseudonym used by "a resident and citizen of the State of Texas" who published an article about FPI.  *Id.* at 61 (Decl. of Matthew Mitzner).  RF allegedly opined (among other things) that FPI faced a risk of insolvency and that directors and an officer of FPI had left the company.  RF published the article anonymously on SeekingAlpha.com, a New York-based internet outlet focusing on stock market analysis.  FPI's stock dropped approximately thirty-nine percent soon after the article appeared on the website.  At the same time, RF allegedly had taken a short position, essentially betting that FPI's stock price would

---

[1]  "SLAPP is an acronym for 'strategic litigation against public participation.'" *NCDR*, 745 F.3d at 746 n.3.

decrease. FPI characterizes RF's alleged efforts as a "short and distort scheme." *Id.* at 122.

FPI then brought claims against RF based upon the publication of the article and related comments on Twitter. These included claims of defamation, disparagement, intentional interference with prospective business relations, unjust enrichment, deceptive trade practices under Colorado's Consumer Protection Act ("CCPA"), and civil conspiracy. The conspiracy charge also included nine unnamed defendants ("Doe Defendants"), whom FPI claims assisted RF in connection with disseminating false and misleading statements in the article and on Twitter.

FPI served RF in state court by substitute service through a person alleged to be RF's former counsel. Further, the state court granted FPI's request to serve the Doe Defendants through substitute service on a different attorney. That attorney later reported that he had no knowledge of the existence of the Doe Defendants. Relatedly, RF sought reconsideration of the state court's ruling of substitute service for the Doe Defendants.

Before the state court ruled on that motion for reconsideration, RF removed the action to federal court on September 14, 2018.[2] FPI then filed a motion to

---

[2]  RF removed the action, pursuant to 28 U.S.C. §1332(a), to the United States District Court for the District of Colorado because the parties were alleged to be diverse. FPI was alleged to be a Colorado citizen—with its headquarters

(continued...)

3

remand to state court because the Doe Defendants had not joined or consented to the removal under 28 U.S.C. § 1446(b)(2)(A).  As an alternative to removal, FPI sought limited discovery to determine the Doe Defendants' citizenship.

**B**

RF filed two motions to dismiss.  On October 5, 2018, RF filed its first motion to dismiss for lack of personal jurisdiction and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  More relevant for our purposes, just ten days later, RF filed a second motion to dismiss based on the TCPA ("TCPA Motion").  On October 31, 2018, RF requested a hearing to address the TCPA Motion.  FPI opposed this request.

With a magistrate judge presiding, the district court held an initial conference on December 20, 2018.[3]  There, the court vacated the scheduling order in light of the pending motion to remand.  The court also noted its jurisdictional concerns.  The court said the following:

> I have a duty to ascertain my jurisdiction, especially in light of the fact that the removal statute must be strictly construed and all doubts must be resolved in favor of remand.  Minimal discovery may determine whether any John or Jane Does

---

[2](...continued)
and principal place of business in Colorado—and RF was alleged to be a citizen of Texas.

[3]     Pursuant to 28 U.S.C. § 636 and D. Colo. Local Civ. Rule 40.1(c), the parties here consented to proceedings in the case being conducted by a magistrate judge.

exist, a fact which is central to the arguments regarding remand made by both sides . . . . I further want to avoid any possibility that I will consider and grant either or both of the motions to dismiss and never find out whether my jurisdiction had a factual basis. Simply stated, I decline to go forward until jurisdiction is settled.

Aplt.'s App., Vol. IV, at 101–02 (Sched. Conf., Dec. 20, 2018). The court ordered RF to answer limited discovery-related interrogatories to facilitate the court's determination of its diversity jurisdiction. *Id.*

The court then denied all other motions, including the TCPA Motion—notably, *without* prejudice. *Id.* at 102. The court explained:

It is further ordered that the motion to dismiss [filed at document] Number 18 on the electronic docket, [the] motion to dismiss under the Texas Citizens Participation Act [filed at docket] Number 22, [the] motion for hearing on the motion to dismiss under the Texas Citizens Participation Act [filed at docket] Number 32, and the motion for default judgment, [filed at document] Number 37, are denied *without* prejudice. *If it is determined that the Court possesses subject matter jurisdiction, those motions may be refiled as appropriate*.

*Id.* at 102–03 (emphases added).

## C

On January 4, 2019, RF filed a motion to reconsider the court's order that obliged RF to answer discovery-related interrogatories. On January 9, the court granted this motion, in part, and permitted RF to respond to half of the jurisdictional interrogatories by January 10, 2019.

5

On January 9, 2019, RF filed the instant appeal from the district court's December 20, 2018, order. As relevant here, RF expressly challenged the district court's decision to deny RF's TCPA Motion and its motion for a TCPA hearing. The parties appeared before the court for a status conference on January 11, 2019. There, RF's counsel insisted that the notice of appeal divested the district court of jurisdiction and effected an automatic stay of the entire action until the Tenth Circuit ruled. The district court disagreed, explaining that, in its view, "[t]here is no stay in this case" and, specifically, that "discovery orders are not appealable under the *Cohen* collateral order doctrine." Aplee.'s Suppl. App. at 39 (Tr. of Status Conf., Jan. 11, 2019) (italics added) (referring to *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949)). RF's counsel voiced his objection, noting in particular that the TCPA Motion was immediately appealable under "the collateral order doctrine . . . because of the First Amendment interplay." *Id.* 40. The court rejected this concern, noting that the TCPA Motion had been "dismissed without prejudice." *Id.*

Ultimately, over RF's continued objections, the court ordered RF to comply with its order—that is, to file responses to the jurisdictional interrogatories within three days and warned, "I am very likely to hold you [counsel for RF] in contempt." *Id.* at 42. Reacting to this advisement, on January 14, 2019, RF submitted responses to the interrogatories that—as the court reasoned—were relevant to the question of its subject-matter jurisdiction.

6

Around the same time, RF had filed a motion to stay all district court proceedings pending the resolution of this appeal. The court did not immediately resolve that motion, however. After over six months of litigation pertaining to the court's jurisdiction, the court concluded that, though the existence of the Doe Defendants remained "a factual question which is likely to be the subject of formal discovery in this case," there was not a proper foundation for the state court's order of substituted service and, more specifically, that RF's contention that "such service was not reasonably calculated to result in actual notice to the Doe Defendants is well-taken." Dist. Ct. Order, Doc. No. 83, at 11–12 (filed, June 11, 2019).

Accordingly, the court vacated the state court order that had granted FPI's request for substitute service on the Doe Defendants and struck FPI's proof of service of process relating to the Doe Defendants. The upshot was that the matter that had caused the court to harbor doubts concerning its subject-matter jurisdiction—relating the citizenship of the Doe Defendants—was effectively removed from the field and rendered of no consequence by this set of rulings.

Given these orders, the court put the case back on track for litigation of the merits, setting a scheduling conference to meet with the parties. At that time, in July 2019, the court denied RF's motion for stay—concluding that it was not divested of jurisdiction by RF's filing of its January 2019 appeal and specifying

7

at length its view that the court's December 20 order denying RF's TCPA Motion was not an appealable collateral order.

Following this ruling, RF refiled its TCPA Motion to dismiss, specifically in August 2019. However, recognizing the pendency of this appeal, the district court again denied the TCPA Motion *without* prejudice, expressly noting that insofar as RF's August TCPA Motion "was filed to preserve rights under the TCPA, this was unnecessary as RF's rights were preserved through its initial [TCPA] motion." Dist. Ct. Minute Order, Doc. 127, at 2 (Mar. 9, 2020).[4]

## II

### A

Federal appellate courts "have jurisdiction of appeals from all final decisions of the district courts." 28 U.S.C. § 1291. Typically, a final decision is "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). It is undisputed that the district court's December 20 order is not a final order in that sense. However, "final decisions" include not only judgments that "terminate an action" but also a "small class" of prejudgment orders that are "collateral to" the merits of an action and "too important" to be denied immediate review.

---

[4] On April 8, 2020, RF filed another notice of appeal with respect to this denial without prejudice of its renewed TCPA Motion. That appeal has been assigned No. 20-1141. On April 27, 2020, a panel of this court granted the parties' joint motion to abate that appeal pending the resolution of this one.

*Cohen*, 337 U.S. at 545–46. At issue here is whether the court's December 20 order is a final appealable order under *Cohen*'s rubric.

A party asserting jurisdiction under *Cohen*'s collateral order doctrine must show that the district court's order: (1) "conclusively determine[d] the disputed question," (2) "resolve[d] an important issue completely separate from the merits of the action," and (3) is "effectively unreviewable on appeal from a final judgment." *Will v. Hallock*, 546 U.S. 345, 349 (2006) (quoting *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.* 506 U.S. 139, 144 (1993); *accord United States v. Wampler*, 624 F.3d 1330, 1334 (10th Cir. 2010); *Stubblefield v. Windsor Capital Grp.*, 74 F.3d 990, 997 (10th Cir. 1996). "Under the third *Cohen* factor, we examine whether 'the entire category of rulings to which the claim belongs can be adequately vindicated on review of a final judgment or by other means,' not whether the particular circumstances warrant review." *United States v. Copar Pumice Co.*, 714 F.3d 1197, 1204–05 (10th Cir. 2013) (quoting *In re Motor Fuel Temperature Sales Practices Litig.*, 641 F.3d 470, 482–83 (10th Cir. 2011)).

The Supreme Court has described these conditions as "stringent," *Will*, 546 at 349 (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994)). They are designed to protect against "overpower[ing] the substantial finality interests § 1291 is meant to further." *Id.* at 350; *see also Wampler*, 624 F.3d at 1334 (noting that *Cohen* must "never be allowed to swallow the general

9

rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered" (quoting *Digital Equip. Corp.*, 511 U.S. at 868)); *Mesa Oil, Inc. v. United States*, 467 F.3d 1252, 1255 (10th Cir. 2006) (discussing how the *Cohen* doctrine promotes "judicial efficiency by restricting the application of the collateral order doctrine and limiting our acceptance of cases where future, successive appeals are possible").

**B**

In our view, RF's appeal inexorably fails with respect to the first of these requirements—the conclusive-determination condition. And we need not go further in concluding that we have no jurisdiction over RF's interlocutory appeal. *See State of Utah ex rel. Utah State Dep't of Health v. Kennecott Corp.*, 14 F.3d 1489, 1492 (10th Cir. 1994) ("Unless all three requirements are met, jurisdiction is not available under the collateral order doctrine."); *In re Magic Circle Energy Corp.*, 889 F.2d 950, 954 (10th Cir. 1989) ("Because a party seeking to appeal on this [collateral order] basis must show that all three requirements of the doctrine are satisfied, we need not address each if any one is not met."); *see also Harris v. Kellogg Brown & Root Servs., Inc.*, 618 F.3d 398, 401 (3d Cir. 2010) (holding that the conclusive-determination condition was not satisfied and, "[t]herefore, the *Cohen* test is not satisfied, and we need not address the other two prongs of the test").

10

First, the district court's denial of RF's TCPA Motion was without

prejudice and expressly left the door open for RF to refile.  Recall that the court

held a hearing with several motions pending, including RF's TCPA Motion and

FPI's motion for remand.  The district court expressed jurisdictional concerns

related to the ostensible presence of the Doe Defendants in the action who

allegedly had not consented to removal of the case to federal court.  Those

concerns were heightened by the fact that RF's counsel resisted responding to

interrogatories concerning those supposed defendants.

Therefore, until it could be assured as to the propriety of its subject matter

jurisdiction, the district court dismissed RF's TCPA Motion *without* prejudice and

expressly informed RF that it would be permitted to refile that motion at a later

time.  Specifically, the court explained,

> I want to satisfy myself regarding my jurisdiction *before
> proceeding further*, in order to avoid . . . the unpleasant mid-
> case revelation that I have been proceeding in the absence of
> subject matter jurisdiction . . . I further want to avoid any
> possibility that *I will consider* and grant either or both of the
> motions to dismiss and never find out whether my jurisdiction
> had a factual basis. Simply stated, *I decline to go forward
> until jurisdiction is settled*. . . . It is further ordered that the
> motion to dismiss. . . under the [TCPA] . . . and motion for
> hearing on the motion to dismiss under the [TCPA] . . . are
> denied *without* prejudice. If it is determined that the court
> possesses subject matter jurisdiction, those motions *may be
> refiled* as appropriate.

Aplt.'s App., Vol. IV, at 102–03 (emphases added).  In light of the district court's

denial without prejudice of RF's TCPA Motion—which was, practically speaking,

11

simply a postponement of a ruling on the motion's merits—and its explicit authorization for RF to refile the motion, nothing about the court's order could be deemed, in practical terms, a conclusive determination of the TCPA issues presented in that motion.

Indeed, in the ensuing period of approximately six months, the parties' discovery and related litigation pertained to the court's inquiry concerning its subject-matter jurisdiction and not the merits of FPI's substantive claims. And once the district court allayed its concerns regarding its subject-matter jurisdiction, it took no steps to preclude RF from availing itself of the opportunity that it had expressly conferred on RF in its December 20 order—that is, the opportunity to refile the TCPA Motion to dismiss. Indeed, on August 14, 2019, RF actually filed such a motion. Therefore, we are hard pressed to see how the court's December 20 ruling on RF's initial TCPA Motion constituted a conclusive determination of the issues presented in that motion.

To drive the point home, compare the circumstances here to those present in our decision in *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659 (10th Cir. 2018), where we concluded that "the first condition of the collateral order doctrine"—the conclusive-determination condition—was "satisfied." *Id.* at 665. There, the district court reached the merits of the anti-SLAPP motion and "held that New Mexico's anti-SLAPP statute does not apply in federal court," and we determined that this ruling was conclusive because "it is

12

not subject to later review or revision by the district court." *Id.*[5]  This case stands in stark contrast to *Los Lobos*.  Here, it is undisputed that the district court did not reach *any* conclusion concerning the applicability of the anti-SLAPP statute (i.e., the TCPA).  And it expressly indicated that its ruling was *without* prejudice and open to later review and modification.

While we have recognized that "[a] case dismissed without prejudice may or may not be a final appealable order, depending upon the circumstances," *Coffey v. Whirlpool Corp.*, 591 F.2d 618, 620 (10th Cir. 1979), the circumstances of the district court's order here hardly bespeak a conclusive determination of the TCPA's applicability in federal diversity litigation—which would be necessary for the order to satisfy the first condition of the collateral-order doctrine.  *See Cohen*, 337 U.S. at 546 ("The effect of the statute [28 U.S.C. § 1291] is to disallow appeal from any decision which is tentative, informal or incomplete. . . . So long as the matter remains open, unfinished or inconclusive, there may be no intrusion by appeal."); *Southern Ute Indian Tribe v. Amoco Prod. Co.*, 2 F.3d

---

[5]    Other circuits have reached a similar conclusion where the district court resolved an anti-SLAPP motion on the merits.  *See NCDR*, 745 F.3d at 748 (holding that the conclusive-determination condition was satisfied, where the district court resolved a TCPA motion to dismiss on the merits, and "[t]here is also no indication that a trial court would revisit [its earlier TCPA decision]" (quoting *Henry v. Lake Charles Am. Press*, 566 F.3d 164, 174 (5th Cir. 2009))); *DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1013 (9th Cir. 2013) (noting that, under Ninth Circuit precedent, "[a] decision on an anti-SLAPP motion is conclusive as to whether the anti-SLAPP statute requires dismissal of the suit"). But those circumstances are unquestionably *not* present here.

13

1023, 1029 (10th Cir. 1993) ("We have described above the process whereby the district court signed the prepared case management order and the supplemental order at the April 24 hearing. The court declared that it was doing so preliminarily and would enter a more detailed written order, which it did on June 24. Given this scenario, we hold that the April 24 order was not the final cost allocation order for purposes of appeal. As we have said, an order is not final under the collateral order doctrine if it is incomplete or if the matter remains open or unfinished."); 15A Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, FEDERAL PRACTICE & PROCEDURE: JURISDICTION § 3911, Westlaw (database updated Oct. 2020) ("So long as there is a plain prospect that the trial court may itself alter the challenged ruling, there is little justification for immediate appellate intrusion."); *see also United States v. City of Milwaukee*, 144 F.3d 528–29, n.7 (7th Cir. 1998) (noting that, to be "truly final," an order denying intervention "must rule definitively on the party's participation in the litigation before the district court," and the court's order here was not final in that it was a dismissal "without prejudice," and "[t]he district court plainly expressed its intent not to reach the merits of the motion to intervene until it was properly presented" and "specifically invited [the movant] to file a second motion for intervention accompanied by a proper pleading"); *cf. Henry v. Lake Charles Am. Press*, 566 F.3d 164, 173–74 (5th Cir. 2009) (in finding the conclusive-determination condition satisfied with respect to a district court's order denying a motion to

strike (i.e., effectively a motion to dismiss) under Louisiana's anti-SLAPP statute, stating the following: "[F]or an order to be conclusive, it should not be subject to later review or revision in the district court.  The mere power to revisit an order, however, is insufficient to preclude a finding of conclusivity; it should be unlikely that the district court will revisit the order.  That is, the order should be one that a district court rarely, if ever, revisits."  (citations omitted)).

Consistent with this weight of authority, the Third Circuit's analogous decision in *Harris* is instructive.  *See* 618 F.3d at 400–04.  There, the court considered the district court's denial of a motion to dismiss without prejudice. The district court had noted that the defendant was not entitled to immunity under the combat-activities exception "at this time" but had emphasized that its decision was informed by the fact that only "limited discovery" had been conducted to date.  *Id.* at 400 (quoting the district court's order).  The court underscored that it would entertain a renewed motion, if one were warranted in light of the facts obtained through further discovery.  In the interim, however, it thought Plaintiffs "should have the opportunity to conduct merits discovery . . . without the delay that an appeal would inevitably cause."  *Id.*  The defendant filed an interlocutory appeal and argued that the district court's order—a dismissal without prejudice—satisfied *Cohen*'s conclusive-determination condition.

The Third Circuit, however, dismissed the defendant's appeal for lack of appellate jurisdiction.  It explained that the district court's order at issue "did not

15

conclusively determine the disputed issues in the case," *id.* at 402, because it was "nothing resembling a 'complete, formal, and . . . final rejection' of the [defendant's] position." *Id.* (citing *Abney v. United States*, 431 U.S. 651, 659 (1977)). Indeed, the court noted that—in at least two instances—the district court judge "made clear that her rejection [of the defendant's position] was not necessarily her 'final disposition' of these issues." *Id.* (quoting *Cohen*, 337 U.S. at 546). The Third Circuit distinguished the circumstances before it from those where, practically speaking, "it was clear that the district court had rendered its final disposition of the disputed issues, notwithstanding the 'without prejudice' designation," noting that in the instant case, "[t]he District Court explicitly invited the parties to revisit the disputed issues as the factual record developed." *Id.* at 403. Accordingly, the court dismissed the appeal, concluding that the district court's order "did not conclusively determine the disputed issues in this case." *Id.* at 404.

*Harris* is analogous to this case, but here we have an even stronger basis for concluding that the district court's order does not satisfy the conclusive-determination condition. As in *Harris*, in denying RF's TCPA Motion without prejudice, the district court here expressly indicated that it was prepared to consider a renewed TCPA motion—specifically, after it had assured itself that it properly had subject-matter jurisdiction over the case. The court's December 20 order was crystalline on this point: it expressly stated that the TCPA Motion was

16

dismissed without prejudice and "may be refiled as appropriate." Aplt. App., Vol. IV, at 103. Practically speaking, the court's order was a far cry from any "final word on the subject addressed." *Digital Equip. Corp.*, 511 U.S. at 868 (quoting *Desktop Direct, Inc. v. Digital Equip. Corp.*, 993 F.2d 755, 757 (10th Cir. 1993). Indeed, RF was not precluded from renewing its TCPA motion in August 2020, after the court determined that it had subject-matter jurisdiction. The only reason the court did not reach the merits of that motion then—and denied it without prejudice—was because of the pendency of this appeal.

Moreover, it bears highlighting that this case provides an even stronger foundation for a conclusion that *Cohen*'s conclusive-determination condition is not satisfied than *Harris*. That is because in *Harris*, even though the district court expressly left open the door to reconsidering its merits decision on the applicability of immunity under the combat-activities exception, it did in fact opine on the merits of that issue. Here, by contrast, the district court never opined on the merits of the TCPA Motion—provisionally or otherwise.[6] Through

---

[6] This is a more compelling case than *Harris* for determining that the district court's order was not a conclusive determination under *Cohen* in another noteworthy way. Specifically, unlike in *Harris*, the district court did not permit merits-based discovery to proceed after it provisionally denied the motion. Rather, the court here did not permit such discovery to proceed until *after* it had satisfied itself concerning the propriety of its subject-matter jurisdiction. And, at that point, RF was authorized to—and did—renew its TCPA motion. Therefore, in our view, there is not a persuasive argument here that the practical effect of the district court's denial of the TCPA Motion was to conclusively deprive RF of any
(continued...)

17

its without-prejudice denial, the court simply declined to consider the motion's merits until it could satisfy itself as to the propriety of its subject-matter jurisdiction. Accordingly, there is even a stronger argument here than in *Harris* that the court's without prejudice denial of the TCPA Motion did not amount to a conclusive determination of the motion's merits under *Cohen*.

In sum, as in *Harris*—and guided by the weight of authority explicated *supra*—we conclude that the district court's December 20 order denying without prejudice RF's TCPA Motion does not satisfy the conclusive-determination condition of the collateral-order doctrine. Consequently, the December 20 order is not a final appealable order.

## C

In closing, we observe that our conclusive-determination holding is entirely consonant with the well-settled policy of finality that has historically restricted the scope of the collateral order doctrine. In particular, the Supreme Court tells us to resist the "temptation to generalize" areas that fall within the collateral order doctrine. *Will*, 546 U.S. at 350.

_____

[6](...continued)
purported right that the TCPA confers to avoid the burdens of merits-based pretrial litigation. To the contrary, the practical effect of the district court's denial of the TCPA Motion was to simply hit the pause button on the litigation of the merits of the action—including merits-based discovery—until the jurisdictional question was resolved. And, once that question was resolved, RF remained in essentially the same posture as before the denial—able to invoke its purported rights under the TCPA, which it did.

18

The Court has relatedly adopted a restrictive approach toward the doctrine. *Id.* at 350 ("[W]e have not mentioned applying the collateral order doctrine recently without emphasizing its modest scope."); *id.* ("And we have meant what we have said; although the Court has been asked many times to expand the 'small class' of collaterally appealable orders, we have instead kept it narrow and selective in its membership."). "In case after case in year after year, the Supreme Court has issued increasingly emphatic instructions that the class of cases capable of satisfying this 'stringent' test [of the collateral order doctrine] should be understood as 'small,' 'modest,' and 'narrow.'" *Wampler*, 624 F.3d at 1334 (quoting *Digital Equip. Corp.*, 511 U.S. at 868 ("stringent"); *Swint v. Chambers Cnty. Comm'n,* 514 U.S. 35, 42 ("small"); *Will*, 564 U.S. at 350 ("modest"); *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 113 (2009) ("narrow")).

Ultimately, the district court's December 20 order denying the TCPA Motion without prejudice is not an appealable order under *Cohen*. We decline to put this type of order within such a narrow and restricted category of appealable orders. To do otherwise, in our view, would allow for exactly the kind of piecemeal appellate process that the Supreme Court's narrowly defined boundaries on the collateral order doctrine are designed to prevent.

**III**

Accordingly, for the foregoing reasons, we hold that this court lacks

19

jurisdiction.  We therefore **DISMISS** this appeal and **REMAND** the case to the trial court for further proceedings consistent with this order and judgment.


                              ENTERED FOR THE COURT


                              Jerome A. Holmes
                              Circuit Judge

No. 19-1011, *Farmland Partners, Inc. v. Rota Fortunae, et. al.*
**BRISCOE**, Circuit Judge, concurring.

I concur in the result, which directs a remand to the district court. However, there are (or at least were) good arguments to be made in support of our having collateral order jurisdiction over the category of order at issue here. The district court improperly postponed or failed to rule on the applicability of the TCPA, an anti-SLAPP statute, resulting in the arguable loss or diminishment of important rights.

The district court order that is the subject of this appeal was entered on December 20, 2018 and included, among other rulings, a denial of a TCPA motion to dismiss filed by Rota Fortunae (RF). The district court denied RF's TCPA motion to dismiss without prejudice stating it was first concerned with resolving whether the inclusion of Doe defendants destroyed its diversity jurisdiction. The district court noted that RF could refile its TCPA motion once the court determined it had diversity jurisdiction.

The December 20, 2018 order at issue arises in the context of an anti-SLAPP defense that is kindred in some respects to a qualified immunity defense. Inappropriately postponing or refusing to adjudicate a qualified immunity motion is "conclusive" in the sense that it forces the defendant in the short term to stand trial or "face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *see also Workman v. Jordan*, 958 F.2d 332, 335–36 (10th Cir. 1992). Inappropriately postponing or refusing to adjudicate an anti-SLAPP motion also forces a defendant to face discovery or other litigation burdens, creating a risk that free expression will be chilled. *See Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 666–67 (10th Cir. 2018)

1

(discussing how the New Mexico anti-SLAPP statute, "*similar* to a protection from standing trial," aims to "reduce the ordinary time and expense of litigation," which interest dissipates once "burdensome legal process has already been brought to bear" (emphasis in original)).

Were we to assume jurisdiction here, I would conclude that the district court's actions were unauthorized and contrary to law in these specific ways: first, the parties were admittedly diverse, and under the applicable federal statute and our caselaw, the citizenship of Doe defendants is irrelevant. 28 U.S.C. § 1441(b)(1); *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1235 (10th Cir. 2006). Therefore, there was no question that diversity jurisdiction existed at the time of removal. Second, the district court's jurisdiction under the federal removal statute did not depend on the consent of the Doe defendants, who were never properly served, because only properly served defendants are required to consent. *See* 28 U.S.C. § 1446(b)(2)(A). Third and finally, the district court ignored the procedures spelled out by this court for addressing the scenario when, after removal, a Doe defendant is revealed not to be diverse. *See McPhail v. Deere & Co.*, 529 F.3d 947, 951–52 (10th Cir. 2008). Contrary to *McPhail*, the district court did not seek or receive a motion to substitute, did not apply Federal Rules of Civil Procedure 15 and 19, and did not apply any part of 28 U.S.C. § 1447.

That said, given the lengthy pendency of this appeal and the ongoing litigation activity in the district court, the potential guidance our rulings could have provided offer no solace to RF, who has in the interim faced the burdens of litigation including lengthy discovery and now preparation for trial scheduled for July 26, 2021 to July 30, 2021.

Dist. Ct. Dkt. # 145. Indeed, RF refiled its TCPA motion in September 2019, which the district court denied in March 2020 without prejudice due to the pendency of this appeal. *Id.* Dkt. # 98, 110, 112, 127. In the meantime, RF has litigated two attempts by Farmland Partners, Inc. (FPI) to obtain a default judgment against the Doe defendants. *Id.* Dkt. # 36–38, 70, 85. The parties have litigated general and specific requests for protective orders and to stay, quash, or compel discovery. *Id.* Dkt. # 56, 67–68, 79–81, 91, 105, 108, 113, 115–19, 122–23. RF has been ordered to provide responses to FPI's first set of interrogatories and document requests. *Id.* Dkt. # 137. The parties have litigated RF's refiled motion to dismiss on grounds other than the TCPA. *Id.* Dkt. # 97, 110–11, 136. FPI has filed a First Amended Complaint, which RF has answered. *Id.* Dkt. # 155, 157. Fact discovery closed September 24, 2020, and expert discovery closed December 19, 2020. *Id.* Dkt. # 141. When viewed in this context, our review of the district court's December 20, 2018 order would come too late to be of any benefit to the parties.

I nevertheless agree with the majority that remand to the district court is the proper result here. Even in those qualified immunity cases where we concluded we had jurisdiction, we rarely decided the merits of those interlocutory appeals when the qualified immunity issue had not been expressly adjudicated by the district court. Rather, we typically remand the matter so the district court can address the issue on the merits and provide a reasoned opinion for review. *See, e.g.*, *Workman*, 958 F.2d at 336–37 (remanding to the district court to consider qualified immunity because "as a general rule, a federal appellate court does not consider an issue not passed upon below"). Accordingly, I agree remand is the proper result.

3