In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-3277

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

AARON J. SCHOCK,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 16-CR-30061 — **Colin S. Bruce**, *Judge.*

ARGUED APRIL 18, 2018 — DECIDED MAY 30, 2018

Before WOOD, *Chief Judge*, and FLAUM and EASTERBROOK, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Aaron Schock resigned from Congress on March 31, 2015, after his constituents responded adversely to disclosures about trips he took at public expense, the expense of his elaborate office furnishings, and how he had applied campaign funds. Twenty months later, Schock was charged in a federal indictment with mail and wire fraud, theft of government funds, making false state-

ments to Congress and the Federal Elections Commission, and filing false tax returns. The grand jury charged Schock with filing false or otherwise improper claims for reimbursement for his travel and furnishings, and with failing to report correctly (and pay tax on) those receipts that count as personal income. Details do not matter to this appeal.

Schock moved to dismiss the indictment. He contended that the charges are inconsistent with the Constitution's Speech or Debate Clause and with the House of Representatives' constitutional authority to determine the rules of its proceedings. The district court denied the motion, 2017 U.S. Dist. LEXIS 174830 (C.D. Ill. Oct. 23, 2017), and Schock immediately appealed.

The Speech or Debate Clause (Art. I §6 cl. 1) provides: "for any Speech or Debate in either House, [Members of Congress] shall not be questioned in any other Place." The Supreme Court understands this as an immunity from litigation, which permits an interlocutory appeal asserting a right not to be tried. *Helstoski v. Meanor*, 442 U.S. 500 (1979). On the merits, however, the Speech or Debate Clause does not help Schock, for a simple reason: the indictment arises out of applications for reimbursements, which are not speeches, debates, or any other part of the legislative process.

Although the immunity covers committee investigations and other matters within the legislative purview, see *Gravel v. United States*, 408 U.S. 606, 625 (1972), and therefore would protect the making of each chamber's rules about reimbursement, the indictment charges Schock with presenting false claims. Submitting a claim under established rules differs from the formulation of those rules. Charges of the kind brought against Schock have featured in criminal pros-

ecutions of other legislators, and Speech-or-Debate defenses to those charges have failed. See *United States v. Rostenkowski*, 59 F.3d 1291, 1302–03 (D.C. Cir. 1995); *United States v. Biaggi*, 853 F.2d 89, 104 (2d Cir. 1988); *United States v. James*, 888 F.3d 42 (3d Cir. 2018). We have nothing to add to the analysis in these decisions. See also *United States v. Brewster*, 408 U.S. 501, 528 (1972) ("The Speech or Debate Clause does not prohibit inquiry into illegal conduct simply because it has some nexus to legislative functions.").

Schock's principal argument rests on the Rulemaking Clause (Art. I §5 cl. 2): "Each House may determine the Rules of its Proceedings, punish its Members for disorderly Behaviour, and, with the Concurrence of two thirds, expel a Member." The rules about reimbursable expenses were adopted under this clause and, Schock insists, because only the House may adopt or amend its rules, only the House may interpret them. Ambiguity in any rule (or in how a rule applies to a given claim for reimbursement) makes a prosecution impossible, Schock concludes, because that would require a judge to interpret the rules.

The foundation for Schock's argument—the proposition that if Body A has sole power to make a rule, then Body A has sole power to interpret that rule—does not represent established doctrine. Microsoft Corporation has the sole power to establish rules about how much its employees will be reimbursed for travel expenses, but no one thinks that this prevents a criminal prosecution of persons who submit fraudulent claims for reimbursement or fail to pay tax on the difference between their actual expenses and the amount they receive from Microsoft.

Or consider reimbursement rules promulgated by the President for federal employees. Again no one thinks that the Executive Branch's power over rulemaking makes it the rules' sole interpreter. Judges regularly interpret, apply, and occasionally nullify rules promulgated by the President or another part of the Executive Branch, as well as statutes enacted by the Legislative Branch; why would reimbursement rules be different? That each House has sole authority to set its own rules does not distinguish rules from legislation; the two Houses acting jointly have authority to determine the contents of statutes (overriding presidential vetoes if necessary), yet a big part of the judiciary's daily work is the interpretation and application of these enactments. *Yellin v. United States,* 374 U.S. 109, 114 (1963), says that the rules of Congress are "judicially cognizable", which implies a power to interpret and apply them.

We need not come to closure on the question whether there is something special about legislative rules—as some courts have held, see *United States v. Durenberger*, 48 F.3d 1239 (D.C. Cir. 1995)—unless we have appellate jurisdiction. Otherwise final resolution of Schock's arguments must await an appeal from a final decision, should he be convicted. The Supreme Court has not held that arguments based on the Rulemaking Clause may be presented on appeal before final decision. Four courts of appeals have concluded that criminal defendants may take interlocutory appeals to make arguments about the separation of powers. See *United States v. Rose*, 28 F.3d 181, 185–86 (D.C. Cir. 1994); *United States v. Claiborne*, 727 F.2d 842, 844–45 (9th Cir. 1984); *United States v. Hastings*, 681 F.2d 706, 708–09 (11th Cir. 1982); *United States v. Myers*, 635 F.2d 932, 935–36 (2d Cir. 1980). But those decisions do not persuade us on that broad proposition.

Our reason can be stated in one paragraph: Neither the separation of powers generally, nor the Rulemaking Clause in particular, establishes a personal immunity from prosecution or trial. The separation of powers is about the allocation of authority among the branches of the federal government. It is an institutional doctrine rather than a personal one. The Speech or Debate Clause, by contrast, sets up a personal immunity for each legislator. The Supreme Court limits interlocutory appeals to litigants who have a personal immunity—a "right not to be tried." No personal immunity, no interlocutory appeal.

The link between a personal immunity and an interlocutory appeal in a criminal prosecution was stressed in *Midland Asphalt Corp. v. United States*, 489 U.S. 794 (1989). A criminal defendant contended that public disclosure of grand jury materials spoiled the prosecution and insisted that it could appeal from the rejection of that contention because a conviction at trial would render harmless any grand jury violation, so if the right was to be vindicated that had to occur before trial. But the Justices unanimously held that an immediate appeal is forbidden by the final-decision rule, even on the assumption that this would mean no appellate consideration of the claim. That is so, the Court held, because the right does not entail an immunity from prosecution. The Court distinguished between rights that entail the dismissal of the charge (such as a contention that the indictment does not state an offense) and a right not to be tried. The fact that a right is vindicated by dismissing a charge does not imply a right not to be tried.

To show this, the Court relied on *United States v. MacDonald*, 435 U.S. 850 (1978), which held that a claim based on

the Speedy Trial Clause must await the final decision, even though such a claim is vindicated by dismissing the indictment, and *United States v. Hollywood Motor Car Co.*, 458 U.S. 263 (1982), which held that a claim of vindictive prosecution must await the final decision, even though it too is vindicated (if successful) by dismissing the indictment.

> Even when the vindication of the defendant's rights requires dismissal of charges altogether, the conditions justifying an interlocutory appeal are not necessarily satisfied. In *MacDonald*, for example, we declined to permit a defendant whose speedy trial motion had been denied before trial to obtain interlocutory appellate review, despite our recognition that "an accused who does successfully establish a speedy trial claim before trial will not be tried." … This holding reflects the crucial distinction between a right not to be tried and a right whose remedy requires the dismissal of charges. … The former necessarily falls into the category of rights that can be enjoyed only if vindicated prior to trial. The latter does not.

458 U.S. at 269. See also *Midland Asphalt*, 489 U.S. at 801: "One must be careful … not to play word games with the concept of a 'right not to be tried.' … [A]ny legal rule can be said to give rise to a 'right not to be tried' if failure to observe it requires the trial court to dismiss the indictment or terminate the trial. But that is assuredly not the sense relevant for purposes of the exception to the final judgment rule."

Of the four decisions permitting separation-of-powers arguments to support an interlocutory appeal, only *Rose* postdates *Midland Asphalt*. Yet *Rose* did not mention that decision. *Rostenkowski* and *Durenberger*, which follow the jurisdictional holding of *Rose*, do not discuss the difference between institutional and personal rights. *Myers* postdates *MacDonald*, which it does not mention.

*Hastings* speaks of the separation of powers but is best read as addressing a claim of personal immunity. The defendant, a federal judge, contended that he had a right not to be tried for any crime until he had first been impeached by the House and convicted by the Senate. The court of appeals held that there is no such right, but if there were one it would fit the mold of *Helstoski*, which allowed an appeal of a claim based on the Speech or Debate Clause. *Claiborne*, too, involved a claim by a federal judge to a personal immunity from prosecution while still in office. Only *Rose* and *Myers* present institutional separation-of-powers defenses, and neither of those decisions is compatible with *MacDonald*, *Hollywood Motor Car*, or *Midland Asphalt*.

Schock maintains that the collateral-order doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), permits this pretrial appeal because it presents an issue independent of the merits, too important to be postponed, that cannot be vindicated on appeal from the final decision. Yet Schock's position can be vindicated on appeal from a final decision. Just as in *MacDonald*, *Hollywood Motor Car*, and *Midland Asphalt*, the fact that a victory for Schock on this contention would lead to the dismissal of charges does not mean that it entails a "right not to be tried."

*Midland Asphalt* observed that "[w]e have interpreted the collateral order exception with the utmost strictness in criminal cases." 489 U.S. at 799 (internal citation and quotation marks omitted). See also *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009) (extending that strictness to novel collateral-order arguments in civil cases). *Midland Asphalt* identified only three topics as within the scope of the collateral-order doctrine in criminal cases: release on bail before trial

(an issue now covered by statute, 18 U.S.C. §3145); the Speech or Debate Clause; and the Double Jeopardy Clause. See 489 U.S. at 799, citing *Stack v. Boyle*, 342 U.S. 1 (1951) (bail); *Abney v. United States*, 431 U.S. 651 (1977) (double jeopardy); and *Helstoski*. More recently the Court allowed interlocutory review of a criminal defendant's objection to psychotropic medication. *Sell v. United States*, 539 U.S. 166 (2003). Bail and involuntary medication are independent of the merits and unreviewable on appeal from a conviction, while the other two situations exemplify rights not to be tried. The Speech or Debate Clause provides, after all, that no member of Congress may "be questioned in any other Place" about a speech or debate, and the Fifth Amendment says that no "person [may] be subject for the same offence to be twice put in jeopardy of life or limb". Arguments about the allocation of authority among different branches of government do not entail such personal rights. See *Raines v. Byrd*, 521 U.S. 811 (1997) (individual members of Congress lack standing to assert the prerogatives of Congress as an institution).

This interlocutory appeal must be dismissed to the extent it involves the Rulemaking Clause. Because this opinion creates a conflict among the circuits about interlocutory appeals, in criminal cases, based on institutional arguments about the separation of powers, it was circulated before release to all judges in active service. See Circuit Rule 40(e). None favored a hearing en banc.

Schock's reliance on *United States v. Bolden*, 353 F.3d 870 (10th Cir. 2003), has not been overlooked. *Bolden* accepted an interlocutory appeal in a dispute about the separation of powers—but that appeal was filed by the United States,

which may pursue kinds of interlocutory relief closed to defendants. See *United States v. Davis*, 793 F.3d 712 (7th Cir. 2015) (en banc). When a defendant took an interlocutory appeal to make separation-of-powers arguments, the court of appeals dismissed it. *United States v. Wampler*, 624 F.3d 1330 (10th Cir. 2010) (Gorsuch, J.). *Wampler* might be distinguished on the ground that the appeal did not depend on the defendant's current or former governmental position, but *Wampler* shows at a minimum that the law in the Tenth Circuit does not unambiguously allow an interlocutory appeal in a situation such as ours.

Schock contends that, because we do have jurisdiction over arguments based on the Speech or Debate Clause, we should address his other arguments under the rubric of "pendent appellate jurisdiction." Yet that possibility has been disparaged by the Supreme Court, see *Swint v. Chambers County Commission*, 514 U.S. 35, 43–51 (1995), and whatever scope it retains after *Swint* is limited to compelling situations in civil cases. Cf. *Breuder v. Board of Trustees*, 888 F.3d 266, 271 (7th Cir. 2018). The reasons that *Midland Asphalt* gave for a strict application of the collateral-order doctrine in criminal cases apply equally well to a request that we entertain pendent appellate jurisdiction. In *Abney* the Court stated that legal defenses other than personal immunities could not be added to interlocutory criminal appeals. 431 U.S. at 662–63. It did not employ the phrase "pendent appellate jurisdiction" but effectively foreclosed its use in criminal prosecutions.

If Schock is convicted, he may assert his Rulemaking Clause arguments on appeal from the final decision. Similarly, he may argue that the Rule of Lenity prevents conviction

if the House rules about reimbursement are genuinely ambiguous as applied to his situation.

The district court's decision with respect to the Speech or Debate Clause is affirmed, and the appeal otherwise is dismissed.